UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THUY TRANG THI NGUYEN,

                Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.

Civil No. 3:12-cv-02125-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Thuy Trang Thi Nguyen, ("Nguyen"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC § § 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC § § 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). For the reasons set forth below, that decision should be reversed and remanded for further proceedings.

1 - FINDINGS AND RECOMMENDATION

## ADMINISTRATIVE HISTORY

Nguyen protectively filed for DIB on June 10, 2009,  and SSI on January 6, 2010, alleging a disability onset date of March 7, 2008.  Tr. 150-56.  Her applications were denied initially and on reconsideration.  Tr. 63-70.  On May 23, 2011, a hearing was held before Administrative Law Judge ("ALJ") Steve Lynch.  Tr. 30-61.  The ALJ issued a decision on June 13, 2011, finding Nguyen not disabled.  Tr. 12-29.  After receiving additional evidence, the Appeals Council denied a request for review on October 2, 2012.  Tr. 1-6.  Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.  20 CFR § 410.670a.

## BACKGROUND

Born in 1975, Nguyen was age 35 at the time of the hearing before the ALJ.  Tr. 33.  She is a high school graduate with some college and has past relevant work experience for 16 years as a Department of Human Services case-worker for the State of Oregon and in production/assembly work.  Tr. 290-91, 310.  Nguyen  alleges that she is unable to work due to the combined impairments of chronic pain, fibromyalgia, depression, anxiety and panic attacks, insomnia, headaches, acid reflux, irritable bowel syndrome, post traumatic stress disorder, "syosascial syndrome," and hypertension.  Tr. 289.

## EVIDENCE

I.    **Medical Records**

    A.    **Fibromyalgia**

On May 25, 2007, Nguyen was evaluated by Wai L. Lee, M.D., a  rheumatologist,  following a two-year history of "pain all over" which started after she delivered a child and was admitted for a

severe uterine infection.  Tr. 979-81.  Dr. Lee diagnosed fibromyalgia based upon Nguyen's

complaints of "generalized severe pain associated with insomnia and fatigue and also findings of

18/18 tender points."  Tr. 980.  Dr. Lee evaluated Nguyen again on July 30, 2007, and noted "she

continued to be diffusely tender at 18/18 tender points for fibromyalgia."  Tr. 977-78.

On March 3, 2008, Marylou Constante, M.D., examined Nguyen.  Tr. 440-44.  Noting that

Nguyen complained of "[b]ack and muscle pains consistent with fibromyalgia," Dr. Constante

assessed Nguyen with fibromyalgia, history of abnormal Pap, and irritable bowel syndrome, and

suggested a plan to "[f]ollow-up in two to 3 months for fibromyalgia symptoms[.]"  Tr. 443-44.

On January 21, 2010, F. Chester North, M.D., performed a physical examination and assessed

Nguyen with fibromyalgia, stating:

> The patient has complained of widespread pain.  Basically she has full body
> pain on examination.  I do not find evidence of erythema, swelling, or heat.
> There is no evidence of infection of inflammatory disease.  This appears to be
> a significant exacerbation of her fibromyalgia pain.

Tr. 876.

On May 6, 2010, Nguyen went to urgent care complaining of cluster headaches over the prior

five days, and irritable bowel syndrome and constipation over the prior seven days.  Tr. 944.  Philip

Buckley, M.D. examined Nguyen and ordered oxygen therapy for the headaches.  *Id.*

A week later, Nguyen saw Dr. North for complaints of pain in her left hip, sometimes so

much that she could not walk, three to four times per week.  Tr. 937.  Dr. North ordered x-rays,

which indicated moderate degenerative changes along the pubic symphysis.  Tr. 940.

On June 4, 2010, Dr. North examined Nguyen for multiple complaints of bilateral hip pain,

difficulty walking upon waking due to foot cramps, and difficulty with hand cramping.  Tr. 934.

Nguyen also complained her current pain medications were insufficient. *Id.* Dr. North declined to prescribe additional narcotics. Tr. 936. In addition to fibromyalgia and hip pain, Dr. North diagnosed Nguyen with depression, but noted that she refused a prescription for Fluoxetine because she stated she needed narcotics and was "going to 'check myself in' for depression." Tr. 936.

On September 1, 2010, Nguyen again saw Dr. North for complaints of hip and shoulder pain. Tr. 928. Dr. North stated the bilateral shoulder, hip, and back pain "appears to be associated with fibromyalgia" and prescribed physical therapy as he did not think "increasing narcotics is the best approach for treating her pain." Tr. 930. During that visit, Nguyen also complained of headaches and numbness in her left leg. Tr. 928. Dr. North increased her Fluoxetine prescription for the headaches and diagnosed meralgia paresthetics due to pinching of the lateral femoral cutaneous nerve. Tr. 931.

On September 16, 2010, Nguyen commenced physical therapy. Tr. 926. Molly Bredenberg, a physical therapist, noted that Nguyen presented "with whole body pain due to fibromyalgia, with likely lumbar derangement causing referred pain into the legs" and also demonstrated "decreased range of motion and strength." *Id.*

On September 17, 2010, Carmen Morales, a Physician Assistant, examined Nguyen. Tr. 923. Morales noted Nguyen's history of fibromyalgia and that she was on chronic pain medications morphine and oxycodone and in physical therapy. Tr. 924. Nguyen also complained of sleep apnea and lower extremity edema. *Id.* Morales referred Nguyen for a sleep study. Tr. 925.

On October 13, 2010, Nguyen was discharged after completing four physical therapy sessions. Tr. 918. Bredenberg noted Nguyen met her functional goal of no more than two episodes of falling in a month, though pain was still a "significant problem." *Id.*

Two days later, Dr. North saw Nguyen as a follow-up to a sleep study. Tr. 914-17. Nguyen complained of bilateral shoulder pain and back and hip pain. Tr. 916. Dr. North also diagnosed Nguyen with mild sleep apnea. *Id.* Current medications listed for Nguyen included Ventolin, Protonix, Imitrex, Cyclobenzaprine, Naproxen, Oxycodone, Promethazine, Morphine, Lidocaine, and Fluoxetine. Tr. 915-16.

On October 19, 2010, Heather Penny, M.D., examined Nguyen. Tr. 912-13. Nguyen complained of low back pain, and Dr. Penny noted tenderness in Nguyen's low back with "notable muscle spasm bilateral lumbar paraspinous muscles." *Id.* Dr. Penny concluded the pain was likely an exacerbation of the fibromyalgia and continued the various pain medications. Tr. 913.

On December 1, 2010, Dr. North performed another physical examination and assessed Nguyen with pregnancy, dyspnea, night sweats, headache, fibromyalgia, asthma, and tobacco abuse. Tr. 897-99. Dr. North suggested Nguyen discontinue use of narcotics for her fibromyalgia because of concerns about her pregnancy. Tr. 899.

On December 13, 2010, Nguyen was examined by Maxine Bauer, M.D. , an obstetrician. Tr. 965-69. Dr. Bauer noted Nguyen's long history of fibromyalgia and use of pain medications. Tr. 965. Dr. Bauer assessed Nguyen with depressive disorder, obesity, and a high risk pregnancy due to her narcotic use for chronic pain. Tr. 969.

5 - FINDINGS AND RECOMMENDATION

On April 19, 2011, Nguyen's new treating physician, James Kern, M.D.. performed a physical examination, noted that Nguyen's fibromyalgia had previously not responded to trials of Gabapentin and Lyrica, and continued treatment with narcotic analgesics. Tr. 894-96. Dr. Kern also noted a plan to taper and discontinue narcotic analgesics due to Nguyen's pregnancy. Tr. 894.

On April 28, 2011, Dr. Bauer noted the following problems with Nguyen's high risk pregnancy: chronic pain due to fibromyalgia, depression, obesity, flank pain, and anemia. Tr. 962. Dr. Bauer noted Nguyen had been on a pain contract with her primary care physician which he continued. *Id*. Nguyen had been taking Oxycodone, Morphine, Flexeril, and Carbidopa (for restless leg syndrome), but by that date had weaned herself from everything except Oxycodone. *Id*.

### B.    Mental Health

On December 4, 2008, David Gostnell, Ph.D., a clinical psychologist-neuropsychologist, performed a psychodiagnostic examination of Nguyen. Tr. 659-65. Dr. Gostnell noted Nguyen appeared "somewhat fatigued and lethargic throughout the exam." Tr. 663. Her affect was "moderately restricted, stable, and slightly dysthymic," and her "thought processing was logical, coherent, and goal-directed." *Id*. Nguyen reported limitations in her daily living activities that "reflect pain, fatigue, and problems with her mood that are intertwined in a chronic pain syndrome." Tr. 664. She also complained of cognitive impairments which Dr. Gostnell noted "are not unusual in patients with fibromyalgia," but her brief mental status exam was inconclusive. *Id*. Dr. Gostnell diagnosed Nguyen with Pain Syndrome Associated with Psychological Factors and General Medical Condition; Major Depressive Disorder, Recurrent, Chronic; and Alcohol Abuse, by History. Tr. 665.

On February 10, 2010, Kay L. Stradinger, Psy.D., examined Nguyen.  Tr. 843-49.  She noted that Nguyen's mood appeared slightly dysphoric and anxious, that her affect was blunted, and that she had some difficulty with concentrating.  Tr. 847-48.  Dr. Stradinger diagnosed Nguyen with Major Depressive Disorder, recurrent, moderate to severe; Posttraumatic Stress disorder, chronic; Cannabis abuse in a controlled environment; and history of alcohol abuse.  Tr. 848.  For a functional assessment, Dr. Stradinger opined that Nguyen would be "capable cognitively of performing simple and repetitive work type tasks," but "likely would have a difficult time interacting appropriately and effectively on a daily basis with supervisors, coworkers, and the public."  Tr. 849.  Dr. Stradinger further opined Nguyen "would have a difficult time handling the usual stresses in the workplace given her mood, anxiety, and limited coping skills" and that she "might need extra time and support or reinforcement to learn new job duties and concentrate on multi-step commands, given her depression and anxiety, and difficulties in concentration and attention."  *Id*.

## II.    **Testimony**

### A.    **Sally Clayton, Ph.D.**

Sally Clayton, Ph.D., a psychologist, testified at the hearing.  Tr. 42-52.  Based on her review of the medical records, she opined that Nguyen would meet the DSM-IV criteria for major depressive disorder, recurrent and moderate, an anxiety disorder, and a pain disorder associated with both psychological factors and a general medical condition.  Tr. 44.  Dr. Clayton also opined that Nguyen was mildly impaired in the activities of daily living, and moderately impaired in her social functioning, concentration, persistence, and pace.  Tr. 47-48.

///

**B.**    **Nguyen**

At the hearing, Nguyen testified that she had chronic pain, "around 8, 9" on a scale from 1 to 10, that her hip and knee will sometimes "give up" and cause her to fall to the ground, that she has problems with her hands with pain and cannot hold things without dropping them.  Tr. 38-40. Nguyen also testified that she had problems with memory and concentration.  Tr. 41.

**C.**    **Vocational Expert**

At the hearing, the ALJ presented a Vocational Expert ("VE") with the following hypothetical:

> If we have an individual with the claimant's age, education and work experience who was capable of performing work at the light duty level, would be lifting 20 pounds occasionally and 10 pounds frequently, the standing, walking, and sitting requirements were consistent with the full range of light work.  This person should not perform work at unprotected heights and should avoid hazardous machinery, except she is permitted to drive.  She would be restricted to the simple entry level work, not more than occasional interaction with the public.  Is there any of the past work that you identified that could be performed?

Tr. 56.

The VE testified the hypothetical would be consistent with Nguyen's past work of assembly of small products.  Tr. 57.  When the ALJ added the restriction that the individual had lapses from time to time with concentration, but could make 90- 95% of her production goals, the VE testified she did not think that would negatively impact employment in that occupation.  Tr. 57.  However, a marked difficulty in concentration, persistence, and pace would preclude the ability to consistently attend to the essential functions of the job.  Tr. 60.

///

8 - FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 USC § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled under the meaning of the Act.  20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If so, the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(I) & (b), 416.920(a)(4)(I) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement.  20 CFR §§ 404.1520(a)(4)(ii) & ©, 416.909, 416.920(a)(4)(ii) & (c).  Absent a severe impairment, the claimant is not disabled.  *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. ) P, App. 1 ("Listing of Impairments").  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite the limitations imposed by his or her impairments.  20 CFR §§ 404.1520(e),

416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant

work.  20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e).  If the claimant cannot perform

past relevant work, then at step five, the ALJ must determine if the claimant can perform other work

in the national economy.  *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099; 20

CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at

1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist

in the national economy within the claimant's RFC.  *Id*.  If the Commissioner meets this burden, then

the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960©.

## **ALJ'S FINDINGS**

At step one, the ALJ concluded that Nguyen has not engaged in substantial gainful activity

since March 7, 2008, the alleged onset date.  Tr. 17.

At step two, the ALJ concluded that Nguyen has the severe impairments of scoliosis of the

spine, pain disorder, depression, anxiety, marijuana abuse, and narcotic pain medication dependence.

*Id*.

At step three, the ALJ concluded that Nguyen does not have an impairment or combination of

impairments that meets or equals any of the listed impairments.  Tr. 18.  The ALJ found that Nguyen

has the RFC to perform light work, but cannot work at unprotected heights.  Tr. 19. The ALJ also

found Nguyen should avoid hazardous machinery but is permitted to drive, and that she can do only simple, entry-level work with occasional interaction with the public and coworkers. *Id*.

At step five, the ALJ found that considering Nguyen's age, education, and RFC, she was capable of performing her past relevant work as a small products assembler. Tr. 22. Accordingly, the ALJ determined that Nguyen was not disabled at any time through the date of the decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), *quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

///

///

///

## **FINDINGS**

Nguyen argues that the ALJ erred in five respects:  (1) at step two, he failed to include her fibromyalgia impairment and to consider the combined effects of all of her impairments, whether severe or not severe; (2) he improperly disregarded her testimony; (3) he improperly rejected the medical opinion of Dr. Clayton; (4) at step four, he did not perform a function-by-function analysis to determine her RFC; and (5) he relied on a hypothetical  posed to the VE which was not based upon all of her documented limitations.

## I.    **Step Two Error**

In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments.  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F3d 721, 725 (9th Cir 2011).  An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  20 CFR § 404.1521.  An impairment should be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F3d 683, 686–87 (9th Cir 2005) (citations omitted).  Because the step two inquiry is meant merely as a *de minimus* screening for groundless claims, a finding of non-severity must be based on clearly established medical evidence.  *Id* at 687 (citation omitted).  Thus, this court must determine whether substantial evidence supports the ALJ's conclusion that the medical evidence clearly established that fibromyalgia was not a medically severe impairment.  *Id*, citing SSR 85–28, 1985 WL 56856 (1985).

In his decision, the ALJ noted that Nguyen had been diagnosed with fibromyalgia in 2007, but discounted the diagnosis based on "no evidence of control point testing and no evidence of an examination for fibromyalgia after her alleged onset date." Tr. 20 (internal citation to the record omitted). Instead, he found that Nguyen has a "pain disorder" and "narcotic pain medication dependence." Tr. 17. The ALJ did not address the other multitudinous references, discussion, and diagnoses of fibromyalgia from Nguyen's treating physicians in the record.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are entitled to greater weight than the opinions of other physicians *Rodriguez v. Bowen*, 876 F2d 759, 761-62 (9th Cir 1989). To reject a treating physician's opinion that is contradicted by the opinion of another doctor, an ALJ must provide "specific and legitimate reasons for doing so that are based upon substantial evidence in the record." *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989). An ALJ must provide clear and convincing reasons for rejecting the opinion of a treating physician that is not contradicted by another doctor. *Lester v. Chater*, 81 F3d 821, 830-31 (9th Cir 1995).

The medical record here includes no opinion by any treating or examining physician contradicting Dr. Wai Lee's diagnosis of Nguyen's fibromyalgia. Therefore, the ALJ was required to provide clear and convincing reasons for rejecting Dr. Lee's diagnosis. His reliance on the lack of evidence of "control point testing" is insufficient.

Social Security Regulation 12-2p: Evaluation of Fibromyalgia, provides guidance on how to determine whether the evidence establishes a medically determinable impairment. SSR 12-2p, 2012

WL 3104869 (July 25, 2012).[1]  Under SSR 12-2p, beyond a diagnosis from a physician, a claimant must provide evidence satisfying one of two different sets of criteria, and the diagnosis must not be "inconsistent with other evidence in the person's case record." *Id*.  To satisfy the first set of criteria, a claimant must have: (1) a history of widespread pain; that is, pain in all quadrants of the body (right and left sides, above and below waist) and axial skeletal pain (cervical spine, anterior chest, thoracic spine, or low back) that has persisted for at least three months; (2) at least 11 positive tender points out of 18 on physical examination found bilaterally and above and below waist; and (3) evidence other disorders that could cause the symptoms or signs were excluded.  *Id*.  To satisfy the second set of criteria, a claimant must have: (1) history of widespread pain (as above); (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence other disorders that could cause those manifestations were excluded.  *Id*.  The ALJ is required to consider all evidence within at least 12 months of a claimant's alleged date of onset of disability.  20 CFR §§ 404.1512(b) and 416.912(b).

The record contains ample, consistent and substantial evidence as to all of the factors identified in SSR 12-2p.  Going back as far as 2006, Nguyen has consistently complained of widespread body pain.  Nguyen's records also indicate persistent fatigue, depression, anxiety, irritable bowel syndrome, headaches, muscle weakness, constipation, shortness of breath, and pain or cramps in the abdomen.  *See* SSR 12-2p, p. 3 n. 9.  Moreover, Dr. Lee found "18/18 tender points"

---

[1]

The ALJ rendered his decision on June 13, 2011, and was not bound by SSR 12-2p which went into effect July 25, 2012.  *See Paulson v. Bowen*, 836 F2d 1249, 1252 n. 2 (9th Cir 1988) ("[o]nce published, a ruling is binding upon ALJs and is to be relied upon as precedent in determining cases where the facts are basically the same").  However, SSR 12-2p governs the court's analysis because it pre-dated the Appeals Council's October 2, 2012 decision.  *Clowers v. Colvin*, 2013 WL 5835769, *5 n.2 (W.D. Wash., Oct. 30, 2013).

and ruled out the presence of other explanations for her symptoms, including the presence of an inflammatory condition, chronic hepatitis B and C and vitamin D deficiency, and diabetes. Tr. 977, 980-81.

The ALJ also apparently rejected Dr. Lee's diagnosis of fibromyalgia because he found that Nguyen's subjective symptom complaints not credible. An ALJ may reject a physician's opinion based on discredited subjective symptoms. *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001); *Andrews v. Shalala*, 53 F3d 1035, 1043 (9th Cir 1995). As discussed below, however, the ALJ improperly discounted Nguyen's credibility.

The ALJ did not provide specific, legitimate reasons for rejecting the medical opinions of Nguyen's treating physicians. Moreover, as noted, the evidence presented by Nguyen establishes she has a severe medically determinable impairment of fibromyalgia. Because the ALJ erred in this respect, his analyses at steps three and four are likewise in error.

According to SSR 12-2p, once a claimant is determined to have an medically determinable impairment of fibromyalgia, the ALJ must then consider whether it "meets or medically equals the criteria of any of the listings in the Listing of Impairments" SSR 12-2p, 2013 WL 3104869 at *6. Because fibromyalgia is not a listed impairment, the ALJ must "determine whether [it] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id.* The ALJ did not undertake this analysis.

Further, assuming without deciding that Nguyen's medically determinable impairment of fibromyalgia does not meet or equal a listed impairment, the ALJ must then consider the combined

effect of all of Nguyen's impairments in conjunction with her fibromyalgia, severe and non-severe, in determining her RFC. SSR 12-2p describes this process for claimants with a medically determinable impairment of fibromyalgia:

> We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days."

*Id*.

Finally, once an ALJ properly assesses a claimant's RFC, the claimants's fibromyalgia must be taken into additional consideration at steps four and five:

> Widespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories in appendix 2 of subpart P of part 404 (appendix 2). People with [fibromyalgia] may also have nonexertional physical or mental limitations because of their pain or other symptoms.

*Id* (footnotes omitted).

Because the ALJ erred at step two in failing to find Nguyen's fibromyalgia was a medically determinable impairment, the remainder of the ALJ's disability analysis is fatally tainted.

## II.    Nguyen's Credibility

Whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. *Bunnell v. Sullivan*, 947 F2d 341, 346 (9th Cir 1991); *see also Reddick*, 157 F3d at 722; *Smolen v. Chater*, 80 F3d 1273, 1281–82 & n2 (9th Cir 1996). The Commissioner

may not discredit a claimant's testimony about the severity of her symptoms merely because it is

unsupported by objective medical evidence. *Reddick*, 157 F3d at 722; *Bunnell*, 947 F2d at 343, 345.

If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make

findings which support this conclusion." *Bunnell*, 947 F2d at 345. These findings must be

"sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the]

claimant's testimony." *Thomas v. Barnhart*, 278 F3d 947, 958 (9th Cir 2002); *see also Bunnell*, 947

F2d at 345–46. Absent evidence of malingering, the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so."

*Smolen*, 80 F3d at 1283–84; *see also Reddick*, 157 F3d at 722. The ALJ must identify what

testimony is not credible and what evidence discredits the testimony. *Reddick*, 157 F3d at 722;

*Smolen*, 80 F3d at 1284.

The ALJ must follow a two-step process for evaluating the credibility of a claimant's

testimony about symptoms such as pain, fatigue, or weakness. SSR 96-7p, 1996 WL 374186 (July 2,

1996). First, the ALJ must consider whether there is an underlying medically determinable physical

or mental impairment that could reasonably be expected to produce the claimant's pain or other

symptoms. *Batson*, 359 F3d at 1196. Second, if an impairment which could reasonably produce the

claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence,

and limiting effects of the individual's symptoms to determine the extent to which the symptoms

limit the individual's ability to do basic work activities. SSR 96-7p.

When the claimant's statements about the intensity, persistence, or functionally limiting

effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must

make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p also lists factors to consider for determining the credibility of a claimant's statements. One factor is the consistency of the claimant's own statements and the degree to which they are consistent with medical signs and laboratory findings. Another factor is a longitudinal medical record demonstrating a claimant's attempts to seek medical treatment for pain or other symptoms and to follow prescribed treatment.[2] Observations of the individual, other sources of information including non-medical sources such as family and friends and, of course, medical evidence should also be considered.

In determining Nguyen's RFC, the ALJ concluded that Nguyen's medically determinable impairments reasonably could be expected to cause her alleged symptoms. Tr. 20. The ALJ found, however, that Nguyen's "statements regarding the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. *Id*.

The ALJ rejected Nguyen's fibromyalgia diagnosis and focused on her use of narcotics in evaluating her alleged pain complaints. Despite reporting "minimal improvement with pain medications, she still uses them and has sought medications even when not recommended by her physicians." *Id*. He noted that she "began crying and writhing" when her doctor told her additional narcotics would not be prescribed for depression. *Id*. In September 2010 she reported she "had been doing well over the summer," though an examination revealed "pain to palpation of the upper back and trapezius muscles bilaterally." *Id*. The ALJ also noted that Nguyen deliberately became

---

[2]

"Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." SSR 96-7p.

pregnant despite having four children already.  *Id.*  Finally, despite her complaints of "debilitating

pain, she was discharged from a physician's office for failure to keep appointments,"and there was

"no evidence to support [Nguyen's] allegations of falling or problems with gripping."  *Id.*

     None of these reasons are clear and convincing.  As discussed above, Nguyen did have a

medically acceptable diagnosis of fibromyalgia as an underlying condition which caused generalized

pain and fatigue and contributed to her severe mental complaints.  Moreover, Nguyen's use of pain

medication was consistent with her physicians' recommendations.  The record contains no

allegations of inappropriate narcotic or other illegal or non-prescribed drug use.  Other than taking

measures to protect Nguyen's unborn child, her physicians did not recommend against continued use

of narcotics for pain control.  Moreover, Nguyen did not routinely miss her appointments, but

consistently sought treatment and followed medical advice.  *See* Tr. 834 (discharged although

"generally compliant" and only "missed [appointments] secondary to extenuating circumstances").

     Nguyen's pregnancy did not demonstrate activities of daily living inconsistent with her

alleged limitations.  In any event, as it pertains to the ALJ's refusal to credit the extent of Nguyen's

pain complaints because she chose to have a child during the time she claims to have experienced

debilitating pain, this is not a clear and convincing reason to discredit Nguyen.  *Kelly v. Astrue*, 2012

WL 3638029, at *11 (ED Cal Aug 21, 2012).   The court is required to give deference to the ALJ's

credibility determination when it is supported by substantial evidence.  *Anderson v. Sullivan*, 914

F2d 1121, 1124 (9th Cir 1990).  Where, as here, the ALJ improperly relied on Nguyen's choice to

have a child as a reason to discredit her lay statements, the court cannot conclude how much this

rationale impacted the ALJ's overall credibility assessment.  *Kelly*, 2012 WL 3638029, at *11.

Because the ALJ made no finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence to discount Nguyen's credibility. *Smolen*, 80 F3d at 1283-84.    He failed to do so.

**III.    Dr. Clayton's Opinion**

Nguyen also challenges the ALJ's assessment of the testimony of Dr. Clayton by failing to credit her opinion that Nguyen would have a marked impairment in concentration, pace, and persistence when her use of narcotics was also considered.

Dr. Clayton's testimony as to her opinion of the effect of Nguyen's narcotic use was not entirely clear.    When questioned by the ALJ, Dr. Clayton first testified that Nguyen's mental impairments did not meet any Listing.  Tr. 46.    She then went on to state, however:

> I do think there's a possibility that she would have a marked impairment in her concentration, persistence and pace; this is where I'm stopping on partly not my area of expertise, but depending on the impact of the narcotic use --

Tr. 48.

> She later stated:

> Her concentration, persistence, and pace I'm considering moderately impaired, you know, based on her mental status exams throughout.  You know, I'm assuming those are occurring while she's taking the medication, so I'm, I'm including the effects of medication, but again I think there are periods where she might have been taking more . . . medication and had times of being more impaired.

Tr. 49.

> When Nguyen's attorney questioned Dr. Clayton, the following colloquy occurred:

> ATTORNEY:  So, it sounded like your testimony was that at times she would be marked for concentration, persistence and pace?

> ALJ:  I didn't hear her say that.

ATTORNEY:  Somewhat --

DR. CLAYTON:  What I'm saying is --

ATTORNEY:  Well, she said --

DR. CLAYTON:  I did say that's it's [sic] possible, but it's not my area of
expertise to say what the impact of the medication that she's taking has been.

ALJ:  I didn't hear her say marked at all, Mr. Curran, did I miss that, I mean,
my hearing is --

ATTORNEY:  Well, she said it at the beginning --

ALJ:  -- my hearing is bad, did I just miss --

ATTORNEY:  You missed that part?  Oh.  Well, anyway based on the use of
medication, it could be beyond moderate, is what --

DR. CLAYTON:  That is what I said, as a caveat to say, gosh, this, this case
steps on to an area where I'm outside of my --

ALJ:  Well, I'm sorry, it just went right over my bow, I didn't hear you say it.

Tr. 50-51.

Dr. Clayton's testimony about the effect of Nguyen's narcotic use on her concentration, pace,

and persistence was equivocal at best.  Her assessment of the possibility of "marked" limitations

were speculative and admittedly outside her realm of expertise.   State agency consultants  Sandra L.

Lundblad, Psy.D., Joshua J. Boyd, Psy.D., Neal E. Berner, M.D., and J. Scott Pritchard, D.O., found

no marked limitations in Nguyen's concentration, pace, and persistence.  Tr. 835-42, 850-63, 883-84.

When Nguyen's attorney asked Dr. Clayton about a Dr. Lundblad's evaluation and conclusions,

Dr. Clayton explained:

ATTORNEY:  So then I look at the mental RFC that's in there, that's at [Dr.
Lundblad's evaluation].  I wonder if you had an opinion on this?  I guess I

look at the very end of page three, it says no comprehension of memory limits. Do you agree with that, or do you think she would be more limited than indicated here?

DR. CLAYTON:  I'm thinking that he's [sic] basing this, since it's from 2 of 10, you, mostly on an evaluation that occurred right before that with Dr. Stratinger [phonetic], you know, as I review her mental status exams, she seems actually quite intelligent, but yes, I'm considering possibly up to a moderate impairment, kind of based on the broad record and the possibility that at times she's having more difficulty with her concentration and attention, for example, as seen on that evaluation by Dr. Gossman [phonetic].

ATTORNEY:  Now I never know, and you'd brought this up in terms of side effects of medication and then concentration, does it appear that the psychiatric review technique, the mental RFC, do those people, and you don't know for sure, but, are they considering the side effects of medication, as far as you can tell?

DR. CLAYTON:  You know, I have to assume that they are because they have the same information that I do.  I think the evaluators within, like Dr. Strattinger and Dr. Gossman, don't necessarily have all of the information, but the reviewers do, so they're making a different conclusion than I am.

Tr. 51-52.

Contrary to Nguyen's contention, the ALJ did not hear and deliberately ignore Dr. Clayton's opinion.  The ALJ reasonably interpreted Dr. Clayton's testimony as opining that Nguyen suffered moderate limitation on her concentration, persistence, or pace.  That opinion was consistent with those of the state agency consultants.

## IV.    **Step Four Determination**

Nguyen argues the ALJ erred in his step four finding that she could perform past relevant work.  At step four of the five-step sequential evaluation, the claimant carries the burden of proving that she can no longer perform her past relevant work.  *Pinto v. Massanari*, 249 F3d 840, 844 (9th Cir 2001).  Specifically, the claimant is required to prove that she cannot return to her "former type of

work" as that work is generally performed, not just that she cannot return to her particular job. *See*

*Villa v. Hecker*, 797 F2d 794, 798 (9th Cir 1986). Once the claimant has shown that she can no

longer perform her past relevant work, the ALJ has the burden of showing "that, taking into account

a claimant's age, education, and vocational background, she can perform any substantial work in the

national economy." *Pinto*, 249 F3d at 844.

Even though the claimant bears the burden of proof at step four, the ALJ still must make the

factual findings required to support his conclusion. *Id.* The ALJ meets this burden by making

specific findings regarding the claimant's RFC, the physical and mental demands of the past relevant

work, and the relation of the claimant's RFC to the past work, both as it is generally performed in the

economy and as the claimant actually performed it in her prior work. *Id*. at 845. At step four, the

ALJ must make specific findings on all three elements "to ensure that the claimant really can

perform his or her past relevant work." *Breed v. Massanari*, 18 Fed Appx 505, 507 (9th Cir 2001),

quoting *Pinto*, 249 F3d at 845.

### A.    Function-by-Function Analysis

Nguyen first argues the ALJ's RFC assessment suffers from the failure to perform a

"function-by-function" analysis of her work-related abilities. SSR 96-8p, 1996 WL 374184, at *1.

The ALJ must determine a claimant's physical abilities, including the ability to walk, stand, and sit.

20 CFR § 404.1545.

A claimant's RFC may be expressed in terms of an exertional category, such as "light," if it

becomes necessary to assess whether an individual is able to do his or her past relevant work as it is

generally performed in the national economy. *Id.* However, without the initial function-by-function

assessment of the individual's physical and mental capacities, it may not be possible to determine

whether the individual is able to do past relevant work as it is generally performed in the national

economy because particular occupations may not require all of the exertional and nonexertional

demands necessary to do the full range of work at a given exertional level.  *Swett v. Astrue*, 2013 WL

55820, at *4 (WD Wash Jan 2, 2013).

The ALJ determined that Nguyen could perform "light exertion work."  Tr. 22.  However, the

ALJ never determined Nguyen's ability to walk, sit, or stand in an eight hour day or how much

weight she could lift.  Tr. 22.  The Commissioner responds that the ALJ's articulation cited the

regulatory definition of "light" work which has specific, function-by-function parameters.  However,

the mere statement that Nguyen can perform light work as defined by regulation falls short of the

underlying function-by-function analysis required.  *Swett*, 213 WL 55820, at *6.

### B.      Reliance on Only One Aspect of the Job

Nguyen argues the ALJ improperly found she could perform past relevant work as a small

parts assembler based on only one aspect of that job.  It is improper for an ALJ to find that a claimant

is capable of returning to only one aspect of his or her past job.  *Valencia v. Heckler*, 751 F2d 1082,

1087 (9th Cir 1985).  Nguyen argues that she could not perform the job as she had performed it, but

otherwise fails to identify how the ALJ relied on only one aspect of that job.  In any event, the VE

reviewed Nguyen's work history and determined that her prior work in production/assembly met the

Dictionary of Occupational Titles ("DOT") definition of small parts assembler (light unskilled work)

even though she actually performed the job at a more demanding exertional level.  Tr 53-56.  Thus,

the VE's testimony was consistent with the DOT and provided substantial evidence to support the ALJ at step four.

### C.    Remoteness of Past Relevant Work

Nguyen also contends the assembly work she performed was outside the 15-year period of consideration and, therefore, is too remote to qualify as past relevant work.   Past relevant work is work that was "done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity."  20 CFR § 404.1565(a).   The regulation further provides:  "We do not usually consider that work you did 15 years or more *before the time we are deciding whether you are disabled* . . . .   A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply."  *Id* (emphasis added).

Nguyen stated, and the ALJ found, that she did production/assembly work from 1995 to 1997.  Tr. 310.  She alleged she became disabled in March 2008, which is 11 years after she left that line of work.  Tr. 150, 152.  The ALJ found her not disabled through the date of his decision, June 13, 2011, which is 14 years after she left her production/assembly job.  Tr. 22.  Accordingly, Nguyen's work in production/assembly was not too remote to qualify as past relevant work.

### D.    VE Testimony

Finally, Nguyen argues the hypothetical the ALJ posed to the VE was not based on all of her limitations and, thus, has no evidentiary value to support the ALJ's findings.

At step five, the Commissioner must consider "whether, in light of his RFC, age, education, and work experience, [the claimant] has the capacity to perform other work."  *Yuckert*, 476 US at

471.  In making that determination, the ALJ may elicit testimony from a VE, but "'the hypothetical [posed to the VE] must consider all of the claimant's limitations.'"  *Light v. Social Sec. Admin.*, 119 F3d 789, 793 (9th Cir 1997), quoting *Andrews*, 53 F3d at 1044.  "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant."  *Embrey v. Bowen*, 849 F2d 418, 422 (9th Cir 1988) (citations omitted).  The ALJ need not present the VE with every asserted limitation and symptom in the record.  Instead, the ALJ's function is to winnow these down and present the VE with those limitations supported by evidence in the record.  *See id*.  However, if a VE's hypothetical does not reflect all the claimant's limitations, then the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Delorme v. Sullivan*, 924 F2d 841, 850 (9th Cir 1991).

As discussed above, the ALJ improperly considered the medical evidence pertaining to Nguyen's fibromyalgia, improperly rejected Nguyen's testimony, and failed to perform a function-by-function assessment of Nguyen's work-related abilities.  The ALJ did not consider how Nguyen's mental and physical limitations combined to limit her ability to perform substantial gainful activity.  As such, the hypothetical the ALJ posed to the VE was faulty, and the ALJ erred in relying upon that testimony to find that Nguyen was capable of performing past relevant work.

**V.    Remand**

When the Commissioner's decision contains error, the court has discretion whether to remand for further proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000).  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when

the record has been fully developed and the evidence is insufficient to support the Commissioner's

decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138–39 (9th Cir 2011), quoting

*Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004).

The Ninth Circuit has established a three-part test "for determining when evidence should be

credited and an immediate award of benefits directed." *Harman*, 211 F3d at 1178.  The court should

grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is clear from the record that
> the ALJ would be required to find the claimant disabled were such evidence
> credited.

*Id*.

The second and third prongs of the test often merge into a single question:  whether the ALJ

would have to award benefits if the case were remanded for further proceedings.  *Id* at 1178 n2.  The

decision whether to remand for further proceedings or for immediate payment of benefits generally

turns on the likely utility of further proceedings.  *Id* at 1179.  The court may "direct an award of

benefits where the record has been fully developed and where further administrative proceedings

would serve no useful purpose."  *Smolen*, 80 F3d at 1292.

Additional proceedings are necessary here.  The current record fails to reveal what jobs may

exist in the national economy within Nguyen's RFC once her medical condition of fibromyalgia is

properly considered and a function-by-function analysis of her work abilities is undertaken.  Thus, a

remand for further proceedings is warranted to allow the ALJ to properly assess Nguyen's RFC and

to elicit testimony from a VE to determine what work based upon an appropriate RFC in the national

economy Nguyen can perform, if any.  *See Burnsides v. Astrue*, 2010 WL 2730966, at *6 (D Or

July 9, 2010); *Pope v. Astrue*, 2011 WL 3584802, at *19 (D Or May 20, 2011).

## **RECOMMENDATION**

For the reasons discussed above, the Commissioner's decision should be reversed and

remanded pursuant to Sentence Four of 42 USC § 405(g) for further proceedings.

## **SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are

due January 6, 2014.  If no objections are filed, then the Findings and Recommendation will go

under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of

the objections.  When the response is due or filed, whichever date is earlier, the Findings and

Recommendation will go under advisement.

DATED this 19th  day of December 2013.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge